## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

DONALD FURTYS, JR.,

      Petitioner,

v.                                                      Case No. 4:20-cv-355-MW-MJF

RICKY D. DIXON,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner Donald Furtys, proceeding *pro se*, has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. Doc. 1. Respondent ("the State") answered, providing relevant portions of the state court record. Doc. 10. Petitioner replied. Doc. 20. Petitioner now seeks to "supplement" Ground One of his petition based on "newly discovered evidence" in the form of an affidavit from an uncalled witness. Doc. 27 (Proposed Suppl. Pet.); Doc. 28 (Mot. to Suppl.). Petitioner asks this court to stay this proceeding pending exhaustion of this "supplemental" claim in state court. Doc. 29.

The undersigned concludes that no evidentiary hearing is required for the disposition of this matter, and that Petitioner is not entitled to habeas relief. The undersigned further concludes that Petitioner's motion to supplement his petition

should be denied as futile. Correspondingly, Petitioner's motion to stay this proceeding pending exhaustion of the proposed supplemental claim should be denied.[1]

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY[2]

On July 18, 2009, Petitioner and his then-wife, Anna Furtys, adopted two girls from Latvia—L.F. and her older sister C.F. In late July 2009, L.F. turned 8 years old. Shortly thereafter, Petitioner developed a prurient interest in viewing L.F. in the nude. What ultimately gave rise to his criminal convictions was committing video voyeurism against L.F.

Specifically, between July 30, 2011, and July 29, 2012, when L.F. was 10 years old, Petitioner concealed a small, sound-activated digital camera in L.F. and C.F.'s bathroom, in order to secretly record L.F.—for his own amusement, entertainment, sexual arousal or gratification—while L.F. was privately exposing her body. Petitioner set the camera on standby mode, so that the video function

---

[1] The District Court referred this case to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b).

[2] The facts are drawn from the evidence presented at trial, viewed in the light most favorable to the State. Doc. 10-5, Ex. D (Trial Tr.); *see also Jackson v. Virginia*, 443 U.S. 307 (1979).

started recording when sound was detected, and stopped recording when sound no longer was detected. By using the sound-activation feature, Petitioner did not have to make repeated trips to the bathroom to turn the camera on and off.

Petitioner recorded L.F. undressing, using the toilet, moving about naked, showering, and otherwise privately exposing her body.[3] The events were recorded in five separate videos on a single media memory card. Petitioner kept the memory card with his jewelry and other personal keepsakes in a small velvet-lined drawer next to his bed.

In February 2014, Anna Furtys found the memory card in Petitioner's jewelry drawer. After viewing the video-recordings, she turned the memory card over to law enforcement officers. On February 21, 2014, law enforcement officers arrested Petitioner.

## A.    Petitioner's Pretrial and Trial Proceedings

On March 14, 2014, Petitioner was charged in Leon County Circuit Court Case No. 2014-CF-537, with nine counts of Video Voyeurism involving both L.F.

---

[3] One particularly intrusive video-recording captured L.F.'s genital area as she wiped herself.

and C.F. Doc. 10-2, Ex. A at 36-38.[4] On July 29, 2014, the State added two more charges involving L.F.—Lewd or Lascivious Molestation on L.F. *Id*. at 39-41.

Petitioner's defense to the voyeurism charges was two pronged: (1) the charges were barred by Florida's three-year statute of limitations, and (2) the State's evidence did not prove beyond a reasonable doubt the essential element of intent. *See* Doc. 1 at 22 ("The only element of video voyeurism contested by the Petitioner was the element related to his intent or purpose in using the camera that created the video clips referenced in Counts I through IV."). Petitioner maintained that the reason he placed the camera in the bathroom was to try to obtain footage of C.F. and Bryce (Anna Furtys's son from a prior marriage) engaging in sexual conduct.

Petitioner's trial counsel, Justin Ward, mounted a vigorous defense. First, the defense moved to sever the voyeurism charges from the molestation charges. Doc. 10-2, Ex. A at 52-54. The State opposed the motion and notified the defense that it intended to introduce similar fact evidence of Petitioner's other bad acts—including his lewd touching of L.F.'s genitals—to prove the element of intent on the voyeurism

---

[4] Citations to the state-court record are to the electronically-filed exhibits attached to the State's answer. Doc. 10. The citation references the docket entry number followed by the lettered exhibit. Citations to page numbers of an exhibit are to the page numbers of the original document, except when there is also a Bates stamp number. In that instance, the court cites the Bates stamp number appearing at the bottom right corner of the page.

charges. *Id*. at 55-59. At the motion hearing, the State agreed to sever the video voyeurism counts involving C.F., but opposed severance of the remaining charges, all of which pertained to L.F. Doc. 10-3, Ex. B at 294, 308. The trial court denied the motion to sever. *See* Doc. 10-2, Ex. A at 4; Doc. 10-3, Ex. B at 259-301, 302-341; Doc. 10-4, Ex. C at 3-5.

The defense also filed a pretrial motion to dismiss the voyeurism charges based on Florida's statute of limitations. Doc. 10-2, Ex. A at 61-62. The defense maintained that L.F.'s deposition testimony established that the video recordings were created in December 2009 or earlier (when the statute of limitations was three years), but the prosecution of Furtys was not commenced until 2014. *Id*. at 61-62, 126-27. The State opposed the motion, arguing that the video-recording L.F. had discussed in her deposition was not one of the charged video-recordings. *Id*. at 69-125, 128-33. As to the charged video-recordings, the State presented evidence at the motion hearing that L.F.'s school yearbook photograph taken during the 2011-2012 school year—coupled with Anna Furtys's testimony concerning L.F.'s physical appearance (including her short hairstyle) when she was 10 years old and in the fourth grade—established that the video was taken within the limitations period (on or after February 21, 2011). Doc. 10-3, Ex. B at 259-301, 302-341 (Mot. Hr'g Trs.)

The trial court denied the motion to dismiss. Doc. 10-2, Ex. A at 134-35. The court concluded that the undisputed material facts contained in Petitioner's motion and the State's response, did not demonstrate that "a juror will *not* be able to decide that the offenses occurred within the applicable statutory period." *Id*. (emphasis added).

On January 8, 2015, the State amended the information to remove the four voyeurism charges involving C.F., and to provide a more specific time frame for the video recordings underpinning the voyeurism charges involving L.F.[5] Specifically, the second amended information charged Petitioner with five counts of Video Voyeurism on L.F.—a child under 16 years of age—between the dates of July 30, 2011 and May 27, 2013 (Counts I-V). Doc. 10-2, Ex. A at 42-43; *see also* Doc. 10-5, Ex. D at 4. The second amended information also charged Petitioner with two counts of Lewd or Lascivious Molestation on L.F. (Counts VI-VII). Doc. 10-2, Ex. A at 42-43. On February 27, 2015, Petitioner's trial began. Doc. 10-5, Ex. D.

At trial, L.F. testified that within months of coming to live with the Furtyses, Petitioner began showing an unusual interest in her that made her uncomfortable.

---

[5] The video voyeurism charges against Petitioner that involved C.F. were brought in Leon County Circuit Court Case No. 2014-CF-1762.

For example, "every single day" Petitioner complimented L.F. on how she looked and slapped her buttocks. Doc. 10-5, Ex. D at 82.

On another occasion, when L.F. was alone in the house with Petitioner, she was in the bathroom preparing to bathe when she heard a thud outside the bathroom door. L.F. opened the door to find Petitioner lying on the floor near the door—with his head at the gap between the floor and the door. Petitioner explained that he tripped and fell, but L.F. noticed that he was hiding a mirror with a long handle/hook behind his leg. *Id*. at 82-83.

On another occasion, L.F. was in the bathroom undressed ready to take a bath when she noticed a camera sitting in the toilet-brush holder. She got dressed and questioned Petitioner about it. Petitioner told L.F. that it "only recorded – it was only voice." *Id*. at 84.

On another occasion, L.F. fell asleep on the living-room couch and was awakened by Petitioner pulling her pajama bottoms from her body. Petitioner explained that he was looking for his cell phone. *Id*. at 86-87.

On one or more other occasions, L.F. was in her bedroom sleeping when she was awakened by someone touching her. She opened her eyes and saw Petitioner walking out of her room. Her pajama bottoms and underwear were pulled down to

her knees. *Id*. at 87-89. When L.F. confronted Petitioner, he told her not to say anything because he would "get in big trouble and go to jail." *Id*. at 90.

Anna Furtys testified that, beginning shortly after she and Petitioner adopted L.F. and C.F., there was something about the way Petitioner touched and behaved toward L.F. that "just didn't feel right." *Id*. at 44. Anna stopped leaving L.F. alone in the same room as Petitioner. *Id*. at 43-44. On one (and the last) occasion when Anna confronted Petitioner about what she felt was his inappropriate behavior toward L.F., Petitioner denied that his behavior was anything other than "a father/daughter thing," but he then stormed out of the house stating that he was going to kill himself because he was a bad, bad person. *Id*. at 45. A few days after that incident, Anna Furtys found the concealed camera's memory card hidden in Petitioner's jewelry drawer. *Id*. at 28-31, 45.

The first video on the memory card was admitted into evidence. *Id*. at 70. That clip featured Petitioner's face as he was positioning the camera in the girls' bathroom. *Id*. at 28-31, 70.

The trial judge also admitted into evidence an additional five video-recordings from the memory card. *Id*. at 69-70. Those videos featured L.F. privately exposing herself in the bathroom. The judge also admitted the following photographs of L.F. from her school yearbooks: (1) the second grade when L.F. was 8 years old; (2) the

third grade when L.F. was 9 years old; (3) the fourth grade when L.F. was 10 years old; and (4) the fifth grade when L.F. was 11 years old, *Id*. at 32-34. L.F. was 13 years old when she testified at trial. *Id*. at 78.

Anna Furtys and L.F. each testified that L.F. was 10 years old in the video recordings (meaning that the images were recorded between July 30, 2011, and July 29, 2012), based on L.F.'s physical appearance and short hairstyle which she wore only when she was 10 years old—as depicted in L.F's fourth-grade picture. *Id*. at 34-35.[6]

Petitioner testified that he installed the camera in the bathroom because he "wanted to get proof to show [Anna] beyond a shadow of a doubt" that Bryce and C.F. were engaging in sexual activity. *Id*. at 130, 140. Petitioner explained that when Bryce was living with the Furtyses, an agent from the Florida Department of Children and Families ("DCF") came to the house and questioned Bryce about an anonymous report that Bryce and C.F. were engaging in sexual activity. *Id*. at 125-26. Petitioner estimated that he installed the camera in the bathroom between July 2009, and November 2010. *Id*. at 152. Bryce moved out of the Furtyses home in

---

[6] The digital date and time stamp on each video clip was the factory setting—December 31, 2000. It was undisputed that the stamp did not reflect the actual date and time each video was created. L.F. was born in 2001 and Petitioner adopted her in 2009, and thus he could not have photographed her in 2000.

November 2010. Petitioner testified that his installation of the camera had nothing to do with L.F., and that when he saw the footage of L.F. in the nude, he "actually became really scared and upset and thought [he] had erased it." *Id*. at 127-28.

The jury viewed the illicit video-recordings of L.F. both during the State's case and during its deliberations. Doc. 10-5, Ex. D at 68-69, 198-201. The jury also viewed the yearbook photographs of L.F. at the ages of 8-11 to determine for itself when the videos of L.F. were recorded. The jury instructions required the jury to determine not only whether Petitioner committed the charged offenses, but also whether the acts of video voyeurism were committed on or after February 22, 2011. Doc. 10-2, Ex. B at 146-54.

The jury found Petitioner guilty as charged on all five counts of Video Voyeurism (Counts I-V). Doc. 15-2, Ex. A at 155-59. The jury found Petitioner not guilty of the Lewd or Lascivious Molestation charge (Count VI). *Id*. at 160.[7]

On April 6, 2015, the trial court adjudicated Petitioner guilty of the five counts of Video Voyeurism on a Child under 16 Years of Age. The court sentenced Petitioner to concurrent terms of imprisonment for time served, and 10 years on sex

---

[7] At the close of the State's case, the State stipulated to a judgment of acquittal on the second charge of Lewd or Lascivious Molestation (Count VII). Doc. 10-5, Ex. D at 103-04, 204-05.

offender probation. Doc. 10-2, Ex. A at 169-78 (J. & Sentence); *Id*. at 185-93 (Probation Order).

## B.    Petitioner's Direct Appeal and Postconviction Proceedings

Petitioner directly appealed his convictions, but then asked the appellate court to relinquish jurisdiction so that he could file a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. Doc. 10-2, Ex. A at 179; Doc. 10-6, Ex. G. The Florida First District Court of Appeal ("First DCA") temporarily relinquished jurisdiction with directions to the lower court to appoint substitute counsel to represent Petitioner. Doc. 10-7, Ex. J.

Petitioner was appointed conflict counsel William Sharpe to represent him in the Rule 3.850 proceeding. Doc. 10-8, Ex. V at 83-85. On January 22, 2016, Petitioner filed a counseled Rule 3.850 motion that raised two claims. Doc. 10-6, Ex. E at 345-76. First, Petitioner alleged that the State violated *Brady v. Maryland*, 353 U.S. 83 (1963), because the police had custody of his cell phone from the date of his arrest to the date he was released on probation, and failed to disclose that there were three photographs of L.F. on his phone with a short haircut in 2008-2009, which would have been outside the statute of limitations. Doc. 10-6, Ex. E at 366-69. Petitioner claimed, alternatively, that trial counsel was ineffective for failing to adequately investigate and discover the evidence on Petitioner's phone. *Id*. at 370.

The postconviction trial court conducted an evidentiary hearing on Petitioner's claims. Petitioner and Attorney Ward testified. Doc. 10-6, Ex. E at 425-508, 509-48 (Hr'g Trs.). On June 27, 2016, the court denied Petitioner's Rule 3.850 motion, explaining:

> The evidence presented by the Defendant does not convince me that there is any *Brady* violation in this case. The evidence and the record reflect that the State disclosed to the defense the existence of the phone on which the images were contained. There is no indication that any action by the State sought to conceal or keep the Defendant from accessing anything on the phone. It is not reasonable to expect the State to comb through thousands of photographs on a phone that belongs to the Defendant for the purpose of seeing if there may be something on the phone that would be favorable to the defense. Defendant had ample opportunity to recover anything from the phone that it [sic] thought would be helpful to it [sic] in the defense.

> Nor can I find from the evidence presented to me that Defendant's trial counsel was ineffective for failing to comb through the thousands of images on the Defendant's phone to see if there might be some evidence, and specifically these photographs, that would be helpful at trial. The question of the age of the victim at the time of the videos was an issue brought by the defense in a motion to dismiss. The Defendant was thus aware of the importance of the statute of limitations defense to establishing that the videos of his daughter were taken sometime before February 21, 2011.

> His attorney asked him if there was any evidence that might refute the State's theory, based upon the victim's school photographs, that her haircut was consistent with the year 2011, rather than before or after. The Defendant did not suggest to his attorney that there might be photographs on his phone, or elsewhere, that would rebut this theory.

> This is analogous to a situation in which the attorney asks the client if he has anybody who could give him an alibi at the time of the

crime and the client tells him no, then later complains that if the attorney had just done some investigating, he would have discovered the alibi witnesses.

Although I find that there was no *Brady* violation and no ineffective assistance of counsel, I will also address briefly the Defendant's assertion that had this evidence been disclosed or discovered, there is a reasonable probability that the result would have been different at trial. This question is always difficult to assess. The Defendant argues that the photos would have made a big difference with the jury, because they rebut the State's argument that the video was shot sometime after February 21, 2011 because of the style of hair cut of the victim in the video. The jury would see that the victim also had a short haircut at a time prior to February 21, 2011. That is not, however, the end of the inquiry.

One of the photographs is purportedly taken in June of 2008. The other two photographs were taken in April and October 2009, respectively. The Defendant's daughter was born on July [redacted], 2001. In June of 2008 she would have been six years old, soon to turn seven. In April of 2009 she would have been seven years old. In October of 2009 she would have been eight years old. The Defendant presented no photographs showing his daughter with a shorter hair cut after these dates and prior to February 21, 2011. The image on the video presented to the jury does not, in my opinion, look like a six, seven or eight year old.

An appeal to the jury by the Defendant's trial attorney that his client was not guilty because the events took place too long ago for him to be charged would have been a hard sell, and the photographs would not have made it easier. At best, the Defendant's trial attorney would be able to argue to the jury that there were other, earlier times when the Defendant's daughter had a short hair cut. But the State would, presumably, point out the obvious, as I have noted above, i.e., that the images on the photograph[s] are not consistent with the images on the video. I thus do not find that had the defense had these photographs available that there is a reasonable probability that the result of the trial would have been different.

Doc. 10-6, Ex. E at 418-20.

Jurisdiction returned to the First DCA for further proceedings. After briefing where Petitioner was assisted by conflict counsel Melissa Ford, the First DCA affirmed Petitioner's convictions on January 16, 2018, *per curiam* and without written opinion. *Furtys v. State*, No. 1D15-1820, 238 So. 3d 754 (Fla. 1st DCA 2018) (Table) (copy at Doc. 10-7, Ex. N). In a separate case, the First DCA affirmed Petitioner's counseled appeal from the denial of his Rule 3.850 motion. *Furtys v. State*, No. 1D16-4906, 238 So. 3d 744 (Fla. 1st DCA 2018) (Table).

On August 22, 2018, Petitioner filed a *pro se* petition for writ of habeas corpus in the First DCA alleging that his direct-appeal counsel was ineffective. Doc. 10-7, Ex. S. The First DCA summarily denied the petition on the merits. *Furtys v. State*, 273 So. 3d 1197 (Fla. 1st DCA 2019) (Table) (copy at Doc. 10-7, Ex. U).

On February 6, 2019, Petitioner filed a *pro se* successive Rule 3.850 motion. Doc. 10-8, Ex. V at 3-27. Petitioner's successive motion claimed that trial counsel was ineffective for (1) failing to investigate and present evidence of the DCF investigation into Bryce and C.F.'s conduct and for failing to call Bryce, C.F., and DCF witnesses to testify about the inappropriate conduct and the DCF investigation; (2) failing to obtain an expert witness to investigate and analyze Petitioner's cell phone and computer for images that would support the statute-of-limitations

defense; (3) failing to investigate and adequately cross-examine Anna Furtys (4) failing to file a "proper" motion for judgment of acquittal on the video voyeurism charges based on insufficient evidence on the element of intent; and (5) failing to renew his motion to sever the molestation charges from the voyeurism charges. *Id*. at 3-23. Petitioner also raised a corresponding sixth claim of cumulative trial-counsel error. *Id*. at 24-26.

After response from the State, the state circuit court summarily denied the motion on the state procedural ground that it was an abuse of process. The court explained:

> Defendant filed his first Motion for Postconviction relief on January 25, 2016. *Exhibit 1 – Motion for Postconviction Relief.* It was denied on June 27, 2016. Exhibit 2 – *Order Denying Motion for Postconviction Relief.* The instant motion raises new claims that could have been brought in a previous motion and is thus a successive 3.850 motion. Defendant attempts to avoid the procedural bar by claiming that the earlier postconviction motion was filed by the Office of the Public Defender and that because his trial counsel was from the same office, his postconviction counsel had a conflict of interest and did not investigate any ineffective assistance of counsel claims. This is refuted by the record.

> The Office of the Public Defendant conflicted off the case before Defendant's original postconviction motion was filed. Exhibit 3 – *Motion for Appointment of Conflict Counsel*; Exhibit 4 – *Order of Appointment*. Defendant's first motion for postconviction relief is signed by William Sharpe an attorney from regional conflict counsel appointed to represent the Defendant after the Office of Public Defender moved to be excused from the case because of a conflict. Exhibit 5 – *Notice of Appearance*. Accordingly Defendant's claim that

he was prevented from raising these claims in his earlier motion is factually inaccurate and refuted by the record. The Court finds that this motion is an abuse of process and should be denied.

Doc. 10-8, Ex. V at 45-85. The First DCA affirmed, *per curiam* and without written opinion. *Furtys v. State*, 291 So. 3d 556 (Fla. 1st DCA 2020) (Table) (copy at Doc. 10-8, Ex. Y). The mandate issued March 16, 2020. *Id*.

## C.    Petitioner's Federal Habeas Petition

Petitioner filed his *pro se* federal habeas petition on July 15, 2020. Doc. 1. The petition raises ten claims. *Id*. Petitioner's first six claims (Grounds 1-6) are the six trial-ineffective-assistance claims that he presented to the state court in his successive Rule 3.850 motion. *Id*. at 4-23. Petitioner's remaining four claims are the four trial-court error claims that he presented to the state court in his direct appeal, except Petitioner now labels them as federal claims. *Id*. at 19-23.

The State asserts that Petitioner's claims fail for one or more of the following reasons: (1) the claim is procedurally defaulted; (2) the claim presents a purely state-law issue; (3) the claim lacks merit. Doc. 10.

## II.  Relevant Legal Principles

## A.    Federal Habeas Exhaustion Requirement and Procedural Default

"To respect our system of dual sovereignty, the availability of habeas relief is narrowly circumscribed." *Shinn v. Ramirez*, 596 U.S. ___, 142 S. Ct. 1718, 1730

(2022) (citations omitted). One such constraint is the exhaustion requirement and corollary principle of procedural default. *See* 28 U.S.C. § 2254(b); *Shinn*, 142 S. Ct. at 1731-32.

Section 2254 "requires state prisoners to 'exhaust the remedies available in the courts of the State' before seeking federal habeas relief." *Shinn*, 142 S. Ct. at 1732 (quoting 28 U.S.C. § 2254(b)(1)(A)) (alteration adopted). "To satisfy the exhaustion requirement, the petitioner must have fairly presented the substance of his federal claim" to the state's highest court, either on direct appeal or on collateral review. *Picard v. Connor*, 404 U.S. 270, 277-78 (1971); *see O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."); *Castille v. Peoples*, 489 U.S. 346, 351 (1989). "Ordinarily, a state prisoner satisfies this exhaustion requirement by raising his federal claim before the state courts in accordance with state procedures." *Shinn*, 142 S. Ct. at 1732.

State prisoners, however, "often fail to raise their federal claims in compliance with state procedures." *Shinn*, 142 S. Ct. at 1732. Under the doctrine of procedural default, "federal courts generally decline to hear any federal claim that was not

presented to the state courts consistent with the State's own procedural rules." *Shinn*,

142 S. Ct. at 1732 (internal quotation marks and citation omitted).

> Together, exhaustion and procedural default promote federal-state comity. Exhaustion affords States an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights, and procedural default protects against the significant harm to the States that results from the failure of federal courts to respect state procedural rules. Ultimately, it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without giving an opportunity to the state courts to correct a constitutional violation, and to do so consistent with their own procedures.

*Shinn*, 142 S. Ct. at 1732 (internal quotation marks and citations omitted, alteration

adopted). Thus, "only rarely may a federal habeas court hear a claim or consider

evidence that a prisoner did not previously present to the state courts in compliance

with state procedural rules." *Shinn*, 142 S. Ct. at 1730.

**B.    Standard for Excusing a Procedural Default**

"[F]ederal courts may excuse procedural default only if a prisoner 'can

demonstrate cause for the default and actual prejudice as a result of the alleged

violation of federal law.'" *Shinn*, 142 S. Ct. at 1732 (quoting *Coleman v. Thompson*,

501 U.S. 722, 750 (1991)). To establish cause, "the prisoner must 'show that some

objective factor external to the defense impeded counsel's efforts to comply with the

State's procedural rule.'" *Shinn*, 142 S. Ct. at 1732 (quoting *Murray v. Carrier*, 477

U.S. 478, 488 (1986)). In *Coleman*, the Court stated that "[a]ttorney ignorance or

inadvertence is not 'cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must 'bear the risk of attorney error.'" *Coleman*, 501 U.S. at 753 (citation omitted). To demonstrate prejudice, "the prisoner must show not merely a substantial federal claim, . . . but rather that the constitutional violation worked to his *actual* and substantial disadvantage." *Shinn*, 142 S. Ct. at 1732 (internal quotation marks and citations omitted).

In *Martinez v. Ryan*, 566 U.S. 1 (2012), the Supreme Court adopted a "qualification" to *Coleman*'s rule concerning attorney error. *Martinez*, 566 U.S. at 16. The Court held that: "Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." *Martinez*, 566 U.S. at 17. Thus, when a prisoner was afforded counsel in his initial-review collateral proceeding, he must show that postconviction counsel was ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668 (1984), and that his defaulted ineffective-assistance-of-trial-counsel claim is a "substantial" one. *Martinez*, 566 U.S. at 14 (citing *Miller-El v. Cockrell*, 537 U.S. 322 (2003)).

Regarding the showing of a "substantial" claim, the Eleventh Circuit observed:

> [W]e take the Court's reference to *Miller–El* to mean that it intended that lower courts apply the already-developed standard for issuing a COA, which requires "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).
>
> As the Court explained in *Miller–El*, "[a] petitioner satisfies this standard by demonstrating . . . that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." 537 U.S. at 327, 123 S. Ct. at 1034. Where a petitioner must make a "substantial showing" without the benefit of a merits determination by an earlier court, he must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 1604, 146 L. Ed. 2d 542 (2000). That does not mean that a petitioner must show "that some jurists would grant the petition." *Miller–El*, 537 U.S. at 338, 123 S. Ct. at 1040. "[A] claim can be debatable even though every jurist of reason might agree, after the . . . case has received full consideration, that petitioner will not prevail." *Id*.
>
> We observe that this standard is similar to the preliminary review conducted by district judges in § 2254 proceedings. Rule 4 of the § 2254 Rules allows the district judge to summarily dismiss a petition "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief." The Advisory Committee Notes further instruct that, in keeping with the heightened, fact-pleading requirement in habeas cases, "the petition is expected to state facts that point to a real possibility of constitutional error." Advisory Committee Note to Rule 4 of the Rules Governing Section 2254 Cases (quotation marks omitted).
>
> Thus, we examine the allegations in [the petitioner's] proposed second amended § 2254 petition to see whether "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." In making this determination, we consider the

fact-pleading requirement for § 2254 petitions, and the standard from *Strickland*.

*Hittson v. GDCP Warden*, 759 F.3d 1210, 1269-70 (11th Cir. 2014).

## C. Claims Cognizable on Federal Habeas Review

"[F]ederal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle*, 502 U.S. at 67-68.

## D. Section 2254 Standard of Review

A federal court "shall not" grant a habeas corpus petition on any claim that was adjudicated on the merits in state court unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362 (2000).[8] Justice O'Connor described the appropriate test:

---

[8] Unless otherwise noted, references to Supreme Court's *Williams* case are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia)

Page 21 of 77

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Under the *Williams* framework, the federal court must first determine the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). After identifying the governing legal principle, the federal court determines whether the state court's adjudication is contrary to the clearly established Supreme Court case law. The adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *See Early v. Packer*, 537 U.S. 3, 8 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").

---

in part II (529 U.S. at 403-13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

If the "contrary to" clause is not satisfied, the federal court determines whether the state court "unreasonably applied" the governing legal principle set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the legal principle was "objectively unreasonable" in light of the record before the state court. *See Williams*, 529 U.S. at 409; *Holland v. Jackson*, 542 U.S. 649, 652 (2004). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Section 2254(d) also allows habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011). As with the "unreasonable application" clause, the federal court applies an objective test. *See Miller-El*, 537 U.S. at 340 (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). "The question under AEDPA is

not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529 U.S. at 410). AEDPA also requires federal courts to "presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" *Landrigan*, 550 U.S. at 473-74 (quoting 28 U.S.C. § 2254(e)(1)).

The Supreme Court has emphasized often that a state prisoner's burden under § 2254(d) is "difficult to meet, . . .  because it was meant to be." *Richter*, 562 U.S. at 102. The Court elaborated:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin*, 518 U.S. 651, 664, 116 S. Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, <u>a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement</u>.

*Richter*, 562 U.S. at 102-03 (emphasis added).

Page 24 of 77

### III.  PETITIONER'S INEFFECTIVE-ASSISTANCE-OF-TRIAL-COUNSEL CLAIMS
### (GROUNDS 1-6)

Petitioner's first six claims allege that trial counsel Ward was ineffective for:

(1) failing to investigate and present evidence of the DCF investigation into Bryce and C.F.'s sexual activity, including calling Bryce, C.F., and DCF employees to testify;

(2) failing to obtain a medical expert to analyze pictures of L.F. on Petitioner's cell phone and computer, and to testify at trial concerning L.F.'s age in the bathroom video-recordings;

(3) failing to investigate and adequately cross-examine Anna Furtys about the DCF investigation and her purported motivation to "send[ ] [Petitioner] to jail and divorc[e] him;"

(4) failing to file a "proper" motion for judgment of acquittal on the video voyeurism charges based on insufficient evidence of intent; and

(5) failing to "renew" the motion to sever after the trial court denied the motion.

Doc. 1 at 4-17. Petitioner also raises a corresponding sixth claim that the cumulative effect of Ward's errors (listed above) deprived Petitioner of his Sixth- and Fourteenth-Amendment rights. *Id*. at 18.

**A.** **Petitioner Procedurally Defaulted His Trial-Counsel-Ineffectiveness Claims**

The State asserts—and Petitioner concedes—that all of Petitioner's trial-counsel-ineffectiveness claims are procedurally defaulted. Doc. 10 at 25-58; Doc. 1 at 4-19; Doc. 20 at 2. The state court record confirms that when Petitioner raised these six claims in his successive Rule 3.850 motion, the state court summarily denied them—and refused to consider them on the merits—based on the independent and adequate state procedural ground that they were successive and an abuse of process. Doc. 10-8, Ex. V at 45-85; Doc. 10-8, Ex. Y.

**B.** **Petitioner Fails to Make the Requisite Showing under *Martinez* to Excuse His Procedural Default**

Petitioner relies on *Martinez* to argue that his procedural default should be excused and that this court should review his claims *de novo*. First, Petitioner asserts:

> Petitioner was not afforded counsel for his initial review collateral proceedings, and although counsel took over at the appellate phase of the state post-conviction proceedings, it was too late for counsel to raise any new claims at that time; and so counsel had no choice but to work with the claims Petitioner had already raised in his *pro se* rule 3.850 motions.

Doc. 20 at 3.

Petitioner's allegation that the state courts did not appoint him counsel during the pleading and hearing stages of his first Rule 3.850 proceeding is patently false and conclusively refuted by the record. After Petitioner's initial direct-appeal

Page 26 of 77

counsel asked the First DCA to relinquish jurisdiction to the state circuit court for purposes of Petitioner filing a Rule 3.850 motion, the state circuit court appointed conflict counsel William Sharpe to represent Petitioner in his first Rule 3.850 proceeding. *See* Doc. 10-8, Ex. V at 84 (Order of Appointment); *Id*. at 85 (Notice of Appearance). On January 22, 2016, Attorney Sharpe filed Petitioner's first Rule 3.850 motion and represented him during the postconviction evidentiary hearings. Doc. 10-6, Ex. E at 345-76 (Rule 3.850 Mot.); *Id*. at 425-548 (Hr'g Trs.).

Apparently recognizing that the record would not support *that* allegation, Petitioner explains that the reason he did not present these six trial-ineffectiveness claims in his first Rule 3.850 proceeding is that his appointed postconviction counsel did not include that type of claim. Doc. 20 at 2 ("[G]rounds one through six were not properly exhausted in the state court, due to post-conviction counsel's failure to raise ineffective assistance of trial counsel claims on his first state postconviction motion."); *Id*. at 3 ("[B]ecause Petitioner's appointed post-conviction counsel did not raise ineffective assistance of trial counsel claims in the first state postconviction motion, Petitioner should be permitted to raise unexhausted ineffective assistance of trial counsel claims for the first time in this § 2254 proceeding under *Martinez*."). Doc. 20 at 3.

But again, Petitioner's assertion is refuted by the record. Attorney Sharpe *did* raise a trial-counsel-ineffectiveness claim (along with a *Brady* claim) in Petitioner's first Rule 3.850 motion. The state circuit court conducted an evidentiary hearing on both claims and denied them on the merits.

Petitioner's final assertion is that *Martinez* allows him to overcome his procedural default of Grounds One through Six because "post-conviction counsel failed to raise these claims in the first postconviction motion.' Doc. 20 at 2; *see also* Doc. 1 at 8-9, 10-11, 13, 15. Other than stating that postconviction counsel failed to raise these claims, Petitioner alleges no additional facts concerning postconviction counsel's performance.

### i. *Petitioner Fails to Show that Postconviction Counsel Was Ineffective*

To establish cause under *Martinez*, Petitioner must demonstrate that postconviction counsel Sharpe was ineffective under the two-pronged *Strickland* standard. *Hittson*, 759 F.3d at 1262 ("While *Martinez* did not establish a constitutional right to counsel in state post-conviction proceedings, it did adopt the constitutional standard from *Strickland* as the standard governing petitioners' claims that their post-conviction counsel's conduct should excuse a procedural default." (citing *Martinez*, 566 U.S. at 14)).

Thus, Petitioner must establish that Sharpe's conduct "fell below an objective standard of reasonableness," and that, but for Sharpe's unprofessional errors, there is a "reasonable probability" that the result of Petitioner's first Rule 3.850 proceeding would have been different. *Strickland*, 466 U.S. at 694. "Not just any deficiency in counsel's performance will do . . . the assistance must have been so ineffective as to violate the Federal Constitution." *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (citation omitted).

"Obviously the merits of the underlying ineffective-assistance claims have some bearing on both *Strickland* prongs . . . [b]ut the merits of the underlying claim is only a part of the *Strickland* analysis." *Hittson*, 759 F.3d at 1262-63.

> With unlimited time and the benefit of hindsight, a petitioner can come up with any number of potentially meritorious ineffective-assistance claims that he now wishes his collateral counsel had raised. However, a petitioner does not establish constitutionally defective performance simply by showing that (a) potentially meritorious claims existed and (b) his collateral counsel failed to raise those claims. *Murray*, 477 U.S. at 486, 106 S. Ct. at 2644 ("[T]he mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default.").

*Hittson*, 759 F.3d at 1263.

Petitioner has shown nothing more than the mere fact that Sharpe failed to raise the claims Petitioner now presses. As noted above, Sharpe did raise a trial-counsel-ineffectiveness claim, namely, that trial counsel was ineffective for failing

Page 29 of 77

to review pictures on Petitioner's cell phone and personal computer to see if there were any images of L.F. that would support the theories of defense. *See* Doc. 10-6, Ex. E at 366-70 (Mot. for Postconviction Relief). Sharpe developed that claim during the postconviction evidentiary hearing by questioning Petitioner and Attorney Ward. Doc. 10-6, Ex. E at 425-548 (Hr'g Trs.).

Petitioner's bare allegation—that Sharpe failed to raise the additional ineffective-assistance claims that Petitioner later came up with—does not satisfy the habeas pleading standard and falls far short of satisfying his burden under *Strickland*. Rule 2(c) of the Rules Governing Section 2254 Cases "mandates fact pleading as opposed to notice pleading." *Hittson*, 759 F.3d at 1265 (internal quotation marks and citations omitted) (alteration adopted).[9] And *Strickland* requires a factual showing that the attorney's conduct "amounted to *incompetence* under 'prevailing professional norms.'" *Richter*, 562 U.S. 86, 105 (quoting *Strickland*, 466 U.S. at 690) (emphasis added).

Petitioner's allegations do not support a conclusion that Sharpe was *incompetent* for failing to raise Petitioner's now-defaulted claims of trial-counsel

---

[9] Although Petitioner's allegation of postconviction-counsel ineffectiveness is not, technically, a "ground for relief" since it is pleaded only to establish cause to excuse his procedural default, Petitioner still must plead the facts necessary to demonstrate that Sharpe was ineffective under the *Strickland* standard. *See Hittson*, 759 F.3d at 1265 & n.62.

ineffectiveness. Petitioner's generalized allegation that Sharpe failed to raise the claims does not satisfy Rule 2(c)'s pleading requirements, and does not establish that Sharpe's conduct fell below *Strickland*'s performance standard. "[T]he mere fact that counsel did not raise a particular claim does not establish deficient performance under *Strickland.*" *Hittson*, 759 F.3d at 1268; *see also Hittson*, 759 F.3d at 1264-69 (holding that prisoner failed to establish cause under *Martinez*, because his generalized allegations—that his state habeas attorneys were incompetent for failing to raise particular claims—failed to satisfy Rule 2(c)'s pleading requirements and did not establish deficient performance under *Strickland*).

Petitioner's failure to satisfy the *Strickland* standard with regard to postconviction counsel's representation in Petitioner's first Rule 3.850 proceeding means that Petitioner fails to satisfy the requirements necessary to excuse his procedural default under *Martinez*. On that basis, alone, the District Court may deny Grounds 1-6 of the petition as procedurally defaulted, and need not consider whether any of Petitioner's six claims are "substantial."

### ii.  *Petitioner's Underlying Trial-Counsel-Ineffectiveness Claims Are Not "Substantial"*

For the District Court's benefit, the undersigned also has examined the allegations in Petitioner's petition to see whether "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional

Page 31 of 77

right." *Slack*, 529 U.S. at 484. In making this determination, the court considers the fact-pleading requirement for § 2254 petitions, and the standard from *Strickland*. *See Hittson*, 759 F.3d at 1270. Petitioner has not shown that any of his claims have some merit.

   a. **Ground One—Trial Counsel's Failure to Call C.F., Bryce and DCF Employees to Testify About C.F. and Bryce's Sexual Conduct**

   Petitioner claims that trial counsel was ineffective for failing to introduce documentary and testimonial evidence from DCF employees concerning the investigation into C.F. and Bryce's alleged sexual conduct. Doc. 1 at 4. Petitioner also faults counsel for failing to call C.F. and Bryce to testify about their relationship. *Id*. at 7-8. Petitioner claims that this evidence "would have supported his claims and lent additional credibility to his explanation of why he placed a nanny camera in the bathroom of his home." *Id*. at 4; *see also* Doc. 20 at 4-5.

   This claim does not satisfy *Martinez*'s "substantiality" requirement. For starters, it was undisputed at trial that DCF had investigated an anonymous report that Bryce and C.F. engaged in sexual conduct. Both Petitioner and Anna Furtys acknowledged the DCF investigation and the nature of it. Doc. 10-5, Ex. D. It also was undisputed that DCF found "nothing to confirm" the report. Ex. D at 19; *see also* Doc. 10-6, Ex. E at 435 (Petitioner's testimony that the DCF investigation

"never came to fruition."). A reasonable attorney could conclude that it was unproductive to attempt to introduce documentary and testimonial evidence from DCF.

Concerning trial counsel's failure to call Bryce and C.F. to testify, Petitioner's claim is wholly without factual support. Petitioner's burden under *Strickland* is particularly "heavy," because "often allegations of what a witness would have testified to are largely speculative." *Sullivan v. DeLoach*, 459 F.3d 1097, 1109 (11th Cir. 2006) (internal quotation marks and citation omitted). The speculative nature of Petitioner's claim is apparent.

Concerning Bryce, Petitioner does not allege that Bryce was available to testify, and that he would have done so. Petitioner merely offers this speculation:

> Mr. Furtys also alleges that he explained to his trial counsel that his son, Robert Bryce, would have had to corroborate this story [Bryce's "secret relationship with his step-sister" C.F.] once he was placed under oath on the witness stand to testify.

Doc. 1 at 4.

Petitioner's speculation—that Bryce would have had to admit his alleged sexual relationship with C.F.—is countered by Petitioner's own characterization of Bryce's conduct as "illegal." Doc. 20 at 4. Petitioner does not address how, in that circumstance, Bryce could have been compelled to incriminate himself at Petitioner's trial. *See McKiver v. Sec'y, Fla. Dep't of Corr.*, 991 F.3d 1357, 1365

(11th Cir. 2021) ("[A] petitioner's own assertions about whether and how a witness would have testified are usually not enough to establish prejudice from the failure to interview or call that witness.").

And Petitioner wholly fails to address the many other factors counsel would have considered in determining whether calling Bryce to testify would be overall favorable to the defense. These considerations include (1) whether Bryce would be a hostile witness; (2) whether Bryce's testimony on that collateral issue would be admissible;[10] (3) whether Bryce would invoke his Fifth-Amendment right not to incriminate himself; (4) whether the State could elicit testimony from Bryce that incriminated Petitioner; (5) the fact that confirmation of Bryce and C.F.'s alleged sexual relationship did nothing to counter the State's photographic evidence of L.F.'s age in the bathroom videos;[11] and (6) the fact that other trial testimony— Anna's and Petitioner's testimony that Bryce and C.F. ran away together shortly

---

[10] Petitioner's defense was grounded in Petitioner's *suspicion* of sexual conduct between Bryce and C.F. Whether that conduct actually occurred was a collateral issue.

[11] Attorney Ward testified at the first Rule 3.850 evidentiary hearing that the biggest problem for Petitioner's theory of defense was the State's yearbook photos of L.F. Doc. 10-6, Ex. E at 471 (describing the yearbook photos as "basically kill[ing]" Petitioner's defense that the recordings were made in 2009 or 2010).

after the DCF investigation—had the same effect, with less risk, than calling Bryce to testify.

Petitioner's allegations concerning C.F. are equally speculative. Petitioner's habeas petition does not allege that at the time of trial, C.F. was available and willing to testify that she had a sexual relationship with Bryce.[12]  Petitioner also makes the baseless assumption that C.F.'s testimony would have been confined to that which was favorable to the defense. The state court record demonstrates that calling C.F. to testify carried substantial risk for the defense.

Ward was aware that C.F. was uncooperative when DCF and law enforcement investigated her relationship with Bryce. That was discussed during Petitioner's and Anna's testimony. Doc. 10-5, Ex. D. Ward also was aware that when Petitioner was arrested in 2014, C.F. stated to law enforcement that the video camera in the bathroom was discovered two years prior (in 2012, not 2009). *See* Doc. 10-2, Ex. A at 44-47 (Arrest/Probable Cause Aff.). Petitioner had been charged with crimes against C.F. *See* Doc. 10-2, Ex. A at 39-41 (First Am. Information with charges involving C.F. and references to Leon County Circuit Court Case No. 2014-CF-1762). Ward's pretrial deposition of L.F. exposed that C.F. might be a hostile

---

[12] Petitioner's proposed "supplemental" allegations concerning C.F.'s testimony fare no better, as discussed later in this Report and Recommendation. *See supra* Part V.

Page 35 of 77

witness. In her deposition, L.F. related a conversation she and C.F. had after L.F. found a camera in their bathroom: "[C.F.] started like saying that he [Petitioner] was a freak, she just went to all the negative things, and that's when we really started watching what he was doing." Doc. 10-2, Ex. A at 83; *see also id*. at 84 ("[C.F.] said that she knew something was always wrong with him, that he always seemed awkward. . . . And we just tried looking other places, maybe where a camera could be.").

In short, "[c]omplaints concerning uncalled witnesses impose a heavy showing since the presentation of testimonial evidence is a matter of trial strategy and often allegations of what a witness would have testified to are largely speculative." *United States v. Guerra*, 628 F.2d 410, 413 (5th Cir. 1980); *Sullivan*, 459 F.3d at 1109; *Johnson v. Alabama*, 256 F.3d 1156, 1187 (11th Cir. 2001) (noting that the petitioner offered "only speculation that the missing witnesses would have been helpful," which is insufficient to meet the petitioner's burden of establishing a *Strickland* violation); *see also Woodfox v. Cain*, 609 F.3d 774, 808 (5th Cir. 2010) ("Claims that counsel failed to call witnesses are not favored on federal habeas review because . . . speculation about what witnesses would have said on the stand is too uncertain."); *Id.* at 808 (holding that a petition must, among other things, demonstrate "that the witness was available to testify and would have done so.");

Page 36 of 77

*United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) ("A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim.").

Petitioner has not shown that Attorney Sharpe performed below constitutional standards in Petitioner's initial-review collateral proceeding by not raising this claim. Nor has Petitioner shown that his ineffective-assistance-of-trial-counsel claim in Ground One is substantial. As Petitioner has not excused his procedural default of Ground One, this claim should be denied.

### b. Ground Two—Trial Counsel's Failure to Obtain a Medical Expert to Analyze "Exonerating Evidence" and to Testify at Trial

Petitioner alleges that prior to trial, he informed trial-counsel Ward of "exonerating evidence," namely, the photographs of L.F. on Petitioner's cell phone and personal computer from 2008 and 2009, that supported Petitioner's defense. Doc. 1 at 9.[13] Petitioner adds:

> Mr. Furtys also told his trial counsel that there were photographs in a file on his computer titled "Latvia," which were from the Furtys family's vacation in 2008-2009. Mr. Furtys informed his trial counsel that the pictures not only exhibited that in 2008-2009 L. Furtys had

---

[13] Petitioner's statute-of-limitations defense maintained that the video-recordings of L.F. in the bathroom were taken in 2009, when Florida law provided that the prosecution must be commenced within three years of the commission of the offense. *See* Fla. Stat. § 775.15(2)(b) (2009). Petitioner's defense also maintained that in 2009, Petitioner was attempting to confirm C.F.'s and Bryce's sexual activity.

short hair, but also that she had not yet begun to develop through puberty, in contrast with the other photographs the State presented at trial from the yearbook.

*Id*. at 9; *see also* Doc. 20 at 6-8. Petitioner asserts that "a reasonably competent counsel" would have hired an expert to analyze the video-recordings of L.F. from the bathroom to determine L.F.'s age at that time, and to compare L.F.'s appearance in the videos to those pictures from Petitioner's cell phone and computer. *Id*. at 9. Petitioner maintains that there is a reasonable probability that had counsel hired an expert, "a reasonable jury would have acquitted him because they would have determined that the statute of limitations expired." *Id*. at 10.

The linchpin of Petitioner's claim is that he told Ward prior to trial of the "exonerating" pictures of L.F. on his cell phone and computer. Doc. 1 at 9. Petitioner presented a related claim concerning the photographs on his cell phone and computer in his first Rule 3.850 motion. There, however, Petitioner alleged that prior to trial, Ward *was not aware* of the pictures on Petitioner's cell phone and computer. Petitioner faulted Ward for *failing to discover* the photographs. Doc. 10-6, Ex. E at 345-76.

At the evidentiary hearing in Petitioner's first Rule 3.850 proceeding, Petitioner testified under oath that *he never told Ward* that he had relevant pictures of L.F. on his cell phone and computer:

Page 38 of 77

Q [The State]  Did you ever tell your attorney that, by the way, there's photos of my children with shorter hair from, you know, years before this happened?

A [Petitioner]  Didn't know I needed to know that.

Q  You never thought to tell him, by the way, these photos were used –

A  I didn't know that I needed to know that. We didn't have the photos introduced into evidence by the State until late in the game right before my trial. I don't know –

     . . . .

Q  Okay. But you knew beforehand? Yes. Okay.

       Now, did you ever tell your attorney that you had photos of your children with different hairstyles?

A.  No.

Q  No, you never told him that? Okay. On your phone, on your computer, but you didn't tell him?

A  I didn't – I didn't have any idea that I had them until I got my phone back.

Q  When Mr. Sharpe was talking just now, you said you had thousands of photos on your – of your family on your computer, yet you never bothered to tell your attorney, by the way, there's thousands of photos on there, see if there's something on there that can help me with this?

A  My computer and my phone were in State's evidence, and I was more concentrating on keeping my life a free man.

     . . . .

Page 39 of 77

Q  Would you agree with me that the best person to know about pictures of you and your family is you and your family?

A  Probably if I wasn't in the situation I was in.

Q  Okay. But Mr. Ward is not part of your family, is he?

A  Mr. Ward is my attorney.

Q  Yeah. So he wouldn't know what photos that you and your family have taken unless you told him, right?

A  Unless he had asked me, because it was his job to – to inquire with me about things like that.

Q  You understand it's also your job to give him the information he needs to know about?

A  Yeah, I do.

Doc. 10-6, Ex. E at 451-54.

Ward testified that when the State produced the yearbook photographs of L.F. at the pretrial hearing on the motion to dismiss, Ward "spoke to Mr. Furtys about that and asked him if he knew of anything that we could use to rebut the yearbook, and he – he couldn't come up with anything." Doc. 10-6, Ex. E at 469-70. Ward confirmed: "I did ask if he knew of anything to directly address the yearbook photos that would basically kill us on the statute of limitations issue, and he just – he didn't think about the phone." *Id*. at 471.

The state court in Petitioner's first Rule 3.850 proceeding determined a number of facts after hearing Petitioner's and Ward's testimony. As detailed above, the state court found that: (1) there were "thousands of images" on Petitioner's phone; (2) Ward asked Petitioner if there was any evidence that might refute the State's theory that L.F.'s haircut in the videos was consistent with the year 2011 rather than earlier; and (3) Petitioner did not tell Ward that there might be photographs on his phone or elsewhere—or that there was any other evidence—that would rebut the State's theory. Doc. 10-6, Ex. E at 419. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). Petitioner has not rebutted that presumption with "clear and convincing evidence," § 2254(e)(1); nor can he, given Petitioner's sworn testimony at the postconviction evidentiary hearing.

"The information provided by a defendant with regard to any possible defenses is relevant to the scope of counsel's investigation." *Broadnax v. Comm'r, Ala. Dep't of Corr.*, 996 F.3d 1215, 1224 (11th Cir. 2021) (citing *Pooler v. Sec'y, Fla. Dep't of Corr.*, 702 F.3d 1252, 1269-70 (11th Cir. 2012); *Strickland*, 466 U.S. at 691). Because Petitioner had personal knowledge of what was on his cell phone and computer (regardless of whether he remembered it), and because Petitioner did not tell Ward that either device contained pictures of L.F. that would be helpful to the defense, his claim that Ward was ineffective for failing to hire an expert to review

those pictures is not substantial. *Broadnax*, 996 F.3d at 1224; *Williams v. Head*, 185 F.3d 1223, 1237 (11th Cir. 1999) ("An attorney does not render ineffective assistance by failing to discover and develop evidence of childhood abuse [or other information within the client's personal knowledge] that his client does not mention to him.").

Petitioner likewise fails to show that the second aspect of his claim has some merit—that Ward was ineffective for failing to hire a medical expert to review the bathroom video-recordings of L.F. and provide an opinion about L.F.'s age in the videos. For starters, without the pictures from Petitioner's cell phone and computer, Petitioner has not shown what factual basis—except the State's yearbook photos— a medical expert would have used to form an opinion about L.F.'s age in the bathroom video-recordings.

Petitioner also fails to show that expert testimony on that issue was admissible under Florida law. Expert testimony is permissible "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact in understanding the evidence or in determining a fact in issue." Fla. Stat. § 90.702. The Florida Supreme Court has explained:

> Experts assist the jury by testifying "regard[ing] a technical matter of which the jury [does] not have basic knowledge." *State Farm Mut. Auto. Ins. Co. v. Bowling*, 81 So.3d 538, 540 (Fla. 2d DCA 2012). Conversely, we have held that expert testimony should be excluded

when the facts testified to "were within the ordinary experience of the jurors and did not require any expertise beyond the common knowledge of the jurors" to form a reasoned judgment of the facts. *Johnson v. State*, 393 So.2d 1069, 1072 (Fla. 1980).

*Gutierrez v. Vargas*, 239 So. 3d 615, 622 (Fla. 2018).

The jury viewed the five video clips of L.F. in the bathroom as well as L.F.'s school photographs. The jurors themselves could compare the school photographs with the video clips along with L.F.'s appearance at trial (at age 13), and use their common sense to determine L.F.'s approximate age in the bathroom videos.

The state court's factual findings in Petitioner's first Rule 3.850 proceeding confirm that the factfinder did not require any expertise beyond common sense to determine whether L.F.'s appearance in the bathroom videos did or did not resemble her appearance in a particular photograph. The judge in Petitioner's first Rule 3.850 proceeding viewed the photographs that are the subject of Petitioner's present claim (the pictures on Petitioner's cell phone and computer from 2008 and 2009), and compared them to the five video clips of L.F. in the bathroom. Doc. 10-6, Ex. E at 420, 534-35. The state court found as fact that (1) "[t]he image on the video presented to the jury does not, in my opinion, look like a six, seven or eight year old," and (2) "the images on the photograph[s] [from Petitioner's cell phone and computer] are not consistent with the images on the video." *Id*. at 420. These findings

highlight how speculative Petitioner's claim is not only with regard to the admissibility of an expert opinion, but what that opinion would be.

Petitioner has not shown that Attorney Sharpe performed below constitutional standards in Petitioner's initial-review collateral proceeding by not raising this claim. Nor has Petitioner shown that his ineffective-assistance-of-trial-counsel claim in Ground Two is substantial. As Petitioner has not excused his procedural default of Ground Two, this claim should be denied.

### c.    Ground Three—Trial Counsel's Failure to Adequately Cross-Examine Mrs. Furtys Regarding the DCF Investigation and Her Motivation to Send Petitioner to Jail and Divorce Him

Petitioner alleges that trial-counsel Ward was ineffective during cross-examination of Anna Furtys, because although he asked her about the DCF investigation involving C.F. and Bryce, counsel "did not br[ing] to light that Anna Furtys knew about the sexual relationship" between Bryce and C.F. and that she "should have known that the camera was being used to catch Bryce and [C.F.] in the act for the DCF investigation." Doc. 1 at 11-12. Petitioner also alleges that Ward was ineffective because he did not question Anna about whether she was having an affair and "wanted to ostracize [Petitioner] by sending him to jail and divorcing him so she could be in a relationship with her new lover." *Id*. at 12. Petitioner alleges that had counsel asked the latter question, he could have "brought to light that Anna

Furtys wanted to have the advantage in the divorce proceedings to obtain full custody of the children, the house, and any other assets." *Id*. at 12.

This claim is not substantial. The trial transcript demonstrates that Ward questioned Anna about the DCF investigation and the nature of it. Doc. 10-5, Ex. D at 37. Ward also questioned Anna about marital problems, her filing for divorce, and her position to do well financially in a divorce if Petitioner was convicted. *Id*. at 41-43.[14]

Petitioner offers only his speculation about how Anna would have answered the additional questions had Ward asked them (assuming that the questions would not have been stricken through objection). "[I]neffective assistance of counsel cannot be proven via conclusory assertion" or speculation. *Wilson v. Sec'y, Fla.*

---

[14] On re-direct, Anna confirmed:

Q [Prosecutor]  Okay. Now, why is [it] that you are getting a divorce? Is it because of this?

A [Anna Furtys] It is because of this.

. . . .

Q And are you making these allegations or testifying here today in order to get something out of your divorce?

A  Absolutely not, except my freedom.

Doc. 10-5, Ex. D at 47, 48.

*Dep't of Corr.*, 769 F. App'x 825, 827 (11th Cir. 2019); *see also Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F. 3d 1320, 1333-34 (11th Cir. 2012) (denying ineffective-assistance-of-trial-counsel claims because they were conclusory). Petitioner's allegations do not plausibly demonstrate that had Ward asked Anna Furtys the additional questions, her answers would have been such that there is a "substantial, not just conceivable," likelihood that the result of his trial would have been different. *See Richter*, 562 U.S. at 112.

Petitioner has not shown that Attorney Sharpe performed below constitutional standards in Petitioner's initial-review collateral proceeding by not raising this claim. Nor has Petitioner shown that his ineffective-assistance-of-trial-counsel claim in Ground Three is substantial. As Petitioner has not excused his procedural default of Ground Three, this claim should be denied.

### d.    Ground Four—Trial Counsel's Failure to File a "Proper" Motion for Judgment of Acquittal

Petitioner alleges that Ward's motion for judgment of acquittal argued that the circumstantial evidence could not prove Petitioner's guilt due to Petitioner's reasonable hypothesis of innocence. Petition asserts that Ward was ineffective because he "should have argued that the evidence was insufficient to prove the essential element of 'intent to use secret imaging device for his own amusement, entertainment, sexual arousal, or gratification.'" Doc. 1 at 14.

At the close of the State's case, Ward argued for a judgment of acquittal based on double jeopardy, the statute of limitations, and the sufficiency of the evidence on the element of intent. Doc. 10-5, Ex. D at 104-09.

> MR. WARD: Yes, sir. Finally, on the video voyeurism charges, also I recognize that intent is generally a matter for the jury, but I would be remiss not to raise the issue of Mr. Furtys' intent and the lack of evidence [that] this was done with the intent of amusement or sexual gratification, particularly because Mr. Furtys has a reasonable hypothesis of innocence, particular[y] that he was trying to determine whether there was inappropriate contact between Brice [sic] and Carly.
>
> THE COURT: Actually, I have no evidence of that. I've heard your opening statement, but there's no evidence of that and I have to give, again, every reasonable inference in favor of the State on that, so I think the jury could reasonably infer the intent.

Doc. 10-5, Ex. D at 109. Ward renewed his argument at the close of all the evidence. *Id*. at 155.

Ward's motion for judgment of acquittal made the same substantive points that Petitioner says he should have made. *See* Doc. 1 at 15. It was just a more streamlined version. Petitioner has not shown that Ward's argument was so lacking as to constitute deficient performance under *Strickland*, or that it is substantially likely that the trial court would have granted an acquittal had Ward included the lengthier narrative Petitioner proposes.

Petitioner has not shown that Attorney Sharpe performed below constitutional standards in Petitioner's initial-review collateral proceeding by not raising this

Page 47 of 77

claim. Nor has Petitioner shown that his ineffective-assistance-of-trial-counsel claim in Ground Four is substantial. As Petitioner has not excused his procedural default of Ground Four, this claim should be denied.

e.    **Ground Five—Trial Counsel's Failure to "Renew" the Motion to Sever the Video Voyeurism Charges from the Molestation Charges**

Petitioner alleges that Ward was ineffective because, although he filed a pre-trial motion to sever the molestation charges from the voyeurism charges, Ward did not "renew" the motion before trial. Doc. 1 at 16. This claim is conclusively refuted by the record.

The state-court record establishes that Ward filed a motion to sever the charges before trial. Doc. 10-2, Ex. A at 52-54. After the State agreed to sever the counts involving C.F., Ward argued that the molestation and voyeurism counts involving L.F. also should be tried separately. Doc. 10-3, Ex. B at 283-94. The trial court denied the motion to sever. *Id*. at 294.

Just prior to commencement of jury selection, Ward informed the trial court that he "maintained [his] objection to allowing consolidation . . . because consolidation allows the State to make everything a feature of the trial. Doc. 10-4, Ex. C at 3-4.  After hearing additional argument from counsel, the trial court said:

THE COURT: Okay. Still going to go forward. You've got a record, if I'm wrong.

MR. WARD: Yes, sir. And I object for the reasons previously submitted orally and in writing.

THE COURT: Okay. All right.

*Id*. at 5.

Because Petitioner's claim is conclusively refuted by the record, Petitioner cannot show that Attorney Sharpe performed below constitutional standards in the initial-review collateral proceeding by not raising this claim. Nor has Petitioner shown that his ineffective-assistance-of-trial-counsel claim in Ground Five is substantial. As Petitioner has not excused his procedural default of Ground Five, this claim should be denied.

### f.    <u>Ground Six—The Cumulative Impact of Trial Counsel's Ineffective Assistance Deprived Petitioner of a Fair Trial</u>

Petitioner claims that the cumulative impact of the five individual errors discussed above deprived him of a fair trial. Doc. 1 at 18; Doc. 20 at 13-14. Because none of Petitioner's claims raises a substantial claim of trial counsel error, this claim of cumulative error lacks arguable merit. *See United States v. Waldon*, 363 F.3d 1103, 1110 (11th Cir. 2004) (where there is no error or only a single error, there can be no cumulative error); *Finch v. Sec'y, Dep't of Corr*., 643 F. App'x 848, 853 (11th Cir. 2016) (concluding that there was not merit to either of the petitioner's

ineffective-assistance claims; thus, "[b]ecause there are no errors to accumulate, Petitioner cannot prevail on his cumulative-error claim.").

### iii.   *Conclusion*

Petitioner has not made the requisite showing under *Martinez* to excuse his procedural default of Grounds 1-6. Petitioner's procedural default bars this court from reviewing Petitioner's ineffective-assistance-of-trial-counsel claims on the merits, *de novo*.

### IV.  PETITIONER'S TRIAL-COURT-ERROR CLAIMS (GROUNDS 7-10)

**Ground Seven**       **"Federal Due Process Clause was violated when the trial court erred in denying motion to dismiss where the State failed to prove that the offense occurred within the 3-year Statute of Limitations period in violation of the Fourteenth Amendment of the U.S. Constitution." Doc. 1 at 19.**

Petitioner claims that Florida's three-year statute of limitations barred the video voyeurism charges, and that the state court's denial of his motion to dismiss the charges violated his federal right to due process. Doc. 1 at 19-20. Petitioner states that he exhausted this claim by raising it in his direct appeal, but that "to ensure that the claim was fully exhausted in the state court," he filed a state habeas petition alleging ineffective assistance of appellate counsel in order to "to alert the state court as to the federal nature of this constitutional claim." Doc. 20 at 16.

The State asserts that to the extent Petitioner's claim raises an issue of federal constitutional dimension, it is procedurally defaulted because Petitioner's direct appeal did not even tangentially mention any federal constitutional provision or caselaw, to alert the state court to a federal claim. Doc. 10 at 58-59. The State alternatively argues that Petitioner's claim fails on the merits. *Id*. at 60-61.

This court need not reach the exhaustion/procedural default issue, because Petitioner's claim fails on the merits. *See* 28 U.S.C. § 2254(b)(2) ("[A]n application for habeas corpus may be denied on the merits, notwithstanding a petitioner's failure to exhaust in state court.").

Petitioner argues that his conviction violates the Due Process Clause because the State failed to prove beyond a reasonable doubt that he was prosecuted within Florida's three-year statute of limitations. Doc. 1 at 20 (citing *In re Winship*, 397 U.S. 358 (1970)). Even assuming to Petitioner's benefit (without deciding) that the federal due process standard required the State to prove beyond a reasonable doubt— as opposed to merely by a preponderance of the evidence—that the video-recordings of L.F. were made after February 22, 2011, Petitioner has not shown that the State's evidence failed to satisfy that standard.[15]

---

[15] *See generally Dixon v. United States*, 548 U.S. 1, 6-8 (2006) (holding that where a defense "excuse[s] conduct that would otherwise be punishable," but "does not controvert any of the elements of the offense itself," the Government has no

"Sufficiency review essentially addresses whether 'the government's case was so lacking that it should not have even been submitted to the jury.'" *Musacchio v. United States*, 577 U.S. 237, 243 (2016) (quoting *Burks v. United States*, 437 U.S. 1, 16 (1978)). A court conducting sufficiency review "makes a limited inquiry tailored to ensure that a defendant receives the minimum that due process requires: a 'meaningful opportunity to defend' against the charge against him and a jury finding of guilt 'beyond a reasonable doubt.'" *Musacchio*, 577 U.S. at 243 (quoting *Jackson*, 443 U.S. at 314-315), The court "considers only the 'legal' question 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Musacchio*, 577 U.S. at 243 (quoting *Jackson*, 443 U.S. at 319) (emphasis in original). That "limited review" ensures that the court "does not intrude on the jury's role 'to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Musacchio*, 577 U.S. at 243 (quoting *Jackson*, 443 U.S. at 319).

---

constitutional duty to overcome the defense beyond a reasonable doubt); *Smith v. United States*, 568 U.S. 106, 110-12 (2013) (same). In Petitioner's case, the particular fact relevant to the statute of limitations—whether the video-recordings were made on or after February 22, 2011—was not a fact necessary to constitute the crime of video voyeurism. Rather, it was a substantive matter addressed by the jury only if the jury first determined beyond a reasonable doubt that Petitioner committed the offenses of video voyeurism. *See* Doc. 10-2, Ex. A at 148 (Jury Instructions).

The State's evidence on the statute-of-limitations issue consisted of the illicit video-recordings themselves; school photographs of L.F. at different ages that depicted her hairstyle and physical appearance well before and after February 22, 2011; L.F.'s testimony (which was live), and Anna Furtys's testimony that L.F. wore the hairstyle that was depicted in the bathroom videos only when she was 10 years old (i.e., July 2011-July 2012). Petitioner has not shown that, after viewing that evidence in the light most favorable to the prosecution, no rational trier of fact could have found beyond a reasonable doubt that Petitioner's video voyeurism occurred on or after February 22, 2011. It was not the state court's role, nor is it this District Court's role, on sufficiency review to consider conflicts in the evidence or the weight of the State's evidence.

Petitioner has not shown that the State's evidence on the statute-of-limitations issue failed to satisfy the constitutional due process standard. Petitioner, therefore, is not entitled to habeas relief on Ground Seven.[16]

**Ground Eight**     <u>**"Federal Due Process Clause and the Sixth Amendment right to a fair trial were violated when the trial court erred in denying motion to sever the charges of Child Molestation from the Video Voyeurism charges where each offense was alleged to occur at different times and different locations and each charge was used to bolster the other in violation of the**</u>

---

[16] To the extent Ground Seven raises any state-law claims, they are not subject to federal habeas review and cannot provide a basis for relief in this court. *Estelle*, 502 U.S. at 67-68.

**Fourteenth Amendment of the U.S. Constitution." Doc. 1 at 20.**

Petitioner claims that the trial court violated his federal right to due process when it denied his motion to sever the video voyeurism charges from the molestation charges. Doc. 1 at 20-21. Petitioner states that he exhausted this claim by raising it in his direct appeal, and that he also presented this issue in his state habeas petition alleging ineffective assistance of appellate counsel in order to "alert the state court of the federal nature of this claim." Doc. 20 at 17.

The State asserts that to the extent Petitioner's claim raises an issue of federal constitutional dimension, it is procedurally defaulted because Petitioner's direct appeal did not even tangentially mention any federal constitutional provision or caselaw to alert the state court to a federal claim. Doc. 10 at 61-62. The State alternatively argues that the Petitioner's claim fails on the merits. *Id*. at 62-65.

This court need not reach the exhaustion/procedural default issue, because Petitioner's claim fails on the merits. *See* 28 U.S.C. § 2254(b)(2). Under Florida Rule of Criminal Procedure 3.150, two or more offenses which are triable in the same court may be charged in the same indictment or information in a separate count for each offense, when the offenses, are based on the same act or transaction or on two or more connected acts or transactions. *Id*. This permits the joinder of offenses

Page 54 of 77

that are causally related because they "stem from the same underlying dispute and involve the same parties." *Spencer v. State*, 645 So. 2d 377, 382 (Fla. 1994).

A related rule "allows a motion for severance, even if the offenses were not improperly joined, if appropriate to promote a fair determination of guilt or innocence." *Johnson v. State*, 14 So.3d 1282, 1283 (Fla. 2nd DCA 2009) (referencing Fla. R. Crim. P. 3.152(a)). Florida Rule of Criminal Procedure 3.152(a) states:

> (1) In case 2 or more offenses are improperly charged in a single indictment or information, the defendant shall have a right to a severance of the charges on timely motion.

> (2) In case 2 or more charges of related offenses are joined in a single indictment or information, the trial court nevertheless shall grant a severance of charges on motion of the state or a defendant:

>> (A) before trial on a showing that the severance is appropriate to promote a fair determination of the defendant's guilt or innocence of each offense; or

>> (B) during trial, only with defendant's consent, on a showing that the severance is necessary to achieve a fair determination of the defendant's guilt or innocence of each offense.

Fla. R. Crim. P. 3.152(a). Whether to grant a requested severance is within the trial court's discretion. *State v. Vazquez*, 419 So. 2d 1088, 1090 (Fla. 1982).

Petitioner fails to make a threshold showing that the offenses were improperly joined. Offenses are causally connected if there is some significant relationship

between the offenses other than merely similar circumstances and the Defendant's alleged guilt of all of the offenses. *Garcia v. State*, 568 So. 2d 896, 899 (Fla. 1990). The underpinnings of the charges were that Petitioner developed a sexual interest in viewing and touching L.F.'s body shortly after she was adopted, and that this interest led Petitioner to illicitly expose, view and touch L.F.'s genitals, and to illicitly record her in the bathroom as she privately exposed herself. The molestation and the video voyeurism of L.F. were significantly related because they arose from a pattern of continuous sexual harassment and predation.

Moreover, even if joinder of the charges was erroneous under state law, Petitioner has not shown that the error violated his federal constitutional right to a fair trial. In *United States v. Lane*, 474 U.S. 438, 446 n.8 (1986), the Supreme Court stated in a footnote that "[i]mproper joinder does not, in itself, violate the Constitution. Rather, misjoinder would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial." *Lane*, 474 U.S. at 446 n.8. "[A]n error involving misjoinder 'affects the substantial rights' and requires reversal only if the misjoinder results in actual prejudice because it 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Id*. at 449.

Petitioner has not shown that any error in joining the charges had a substantial and injurious effect or influence in determining the jury's verdict on any of the charges. "The danger of improper [joinder] lies in the fact that evidence relating to one crime may have the effect of bolstering the proof of the other." *Sule v. State*, 968 So. 2d 99, 104 (Fla. 4th DCA 2007) (citing *Crossley v. State*, 596 So. 2d 447, 450 (Fla.1992)); *Granville v. State*, 625 So. 2d 1258, 1260 (Fla. 1st DCA 1993).

The trial court instructed the jury that it must consider each count independently of the other:

> A separate crime is charged in each count of the charging document, and while they have been tried together each crime and the evidence applicable to it must be considered separately and a separate verdict returned as to each. A finding of guilty or not guilty as to one crime must not affect your verdict as to the other crimes charged.

Doc. 10-2, Ex. A at 150. The jury is presumed to have followed this instruction. *See Brown v. Jones*, 255 F.3d 1273, 1280 (11th Cir. 2001) ("We have stated in numerous cases . . . that jurors are presumed to follow the court's instructions.").

Moreover, the jury's verdict, itself, demonstrates that the jury differentiated between the crimes and was not contaminated by the joinder. The jury acquitted Petitioner of lewd and lascivious molestation, while convicting him of video voyeurism.

Further, aside from the evidence underlying the molestation counts, the State adduced ample evidence from which a rational jury could conclude that Petitioner committed the video voyeurism as charged. Petitioner's intent in secretly placing the camera in the bathroom was established by L.F. and Anna Furtys's testimony concerning Petitioner's daily leering at L.F. and slapping her buttocks; his attempt to spy on L.F. in the bathroom using a mirror; the fact that Petitioner installed the camera *after* Bryce moved out of the home (which rebutted Petitioner's explanation for installing the camera); Petitioner's storing the memory card containing the recordings of L.F. with his jewelry and other valuables; and Petitioner's incriminating statement to Anna Furtys after she confronted him about his inappropriate behavior toward L.F.

Petitioner has not shown that the joinder of the video voyeurism and molestation charges violated his Federal constitutional right to a fair trial. Petitioner is not entitled to habeas relief on Ground Eight.

**Ground Nine**      **"Petitioner's Firth Amendment right to be free [sic] protected against double jeopardy was violated where the state court adjudicated him guilty of and sentenced him to five counts of video voyeurism on a child under 16 years of age where the counts were based on one act of using or installing a recording device." Doc. 1 at 21.**

Petitioner claims that his five convictions for video voyeurism violate the Double Jeopardy Clause of the United States Constitution. Doc. 1 at 21-22.

Page 58 of 77

Petitioner maintains that the videos charged in the individual counts were captured following Petitioner's installation—on a single occasion—of a single video-recording device. Doc. 20 at 19. Therefore, he committed at most only one criminal act.

The parties agree that Petitioner exhausted this claim by raising it at trial and on direct appeal. Doc. 1 at 22; Doc. 10 at 65. The State asserts that Petitioner is not entitled to relief because he fails to satisfy § 2254(d)'s demanding standard. *Id*. at 65-68.

### A.    State Court's Decision

Trial counsel Ward raised the double-jeopardy issue at sentencing. Doc. 10-3, Ex. B at 227-33. Ward argued that Petitioner set up the video camera only once and, therefore, that he committed only one act of video voyeurism instead of five. *Id*. at 228-29, 230-31.

The State responded that the plain language of the video voyeurism statute (Fla. Stat. § 810.145) indicated that the Florida legislature intended that each illicit video-clip/recording constitute a separate offense. *Id*. at 229-31. The State argued that Petitioner's five convictions did not violate double jeopardy because Petitioner specifically programmed the camera to begin recording upon detecting sound. Each of the five video clips/recordings were made by the camera whenever L.F. made

detectable noise in the bathroom. This was the equivalent of Petitioner manually pressing the "record" button on the camera on five separate occasions to make five distinct recordings. The only difference was that technological advancements made it possible for Petitioner to accomplish that action without being present. *Id*.

> The trial court agreed with the State, explaining:

> THE COURT:  . . . The only thing that keeps us from having – the defendant having made five separate things is he had the technology to have it automatically done. So to me the idea is I want to have not just one video, I want to have a video every time somebody was in that bathroom. And they were – I think if I remember the testimony, it was sensitized to movement or sound.

> . . . .

> So to me, that's not any different. I don't see a double jeopardy problem there, even though it's one act [of installing the camera]. But you do one act to make it. What if five or six different people came in, would it still be one crime.

> MR. WARD [Defense Counsel]:  Yes, sir.

> THE COURT:  I can't agree with that. I may be wrong and it['s] something that's fundamental error if I am, so I welcome the DCA to correct me.

Doc. 10-3, Ex. B at 233. The First DCA affirmed without explanation.

The First DCA's summary affirmance is an "adjudication on the merits" of Petitioner's claim, and is reviewed under § 2254(d)'s deferential standard. *See Richter*, 562 U.S. at 99 ("When a federal claim has been presented to a state court

Page 60 of 77

and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary); *id.* at 100 ("This Court now holds and reconfirms that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'").

### B.    Clearly Established Federal Law

"The Double Jeopardy Clause of the Fifth Amendment provides that no person shall be 'subject for the same offence to be twice put in jeopardy of life or limb.'" *Jones v. Thomas*, 491 U.S. 376, 380 (1989) (quoting U.S. Const., amend. V). In addition to protecting against multiple prosecutions for the same offense, the Clause also prohibits "multiple punishments for the same offense imposed in a single proceeding." *Jones*, 491 U.S. at 381 (internal quotation marks omitted).

With regard to multiple punishments, the Double Jeopardy Clause simply "ensures that the total punishment did not exceed that authorized by the legislature." *Jones*, 491 U.S. at 381; *Missouri v. Hunter*, 459 U.S. 359, 366 (1983) ("[T]he Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended.").

## C.    Petitioner's Claim Does Not Warrant Habeas Relief

Where, as here, there has been one reasoned state judgment rejecting a federal claim followed by a later unexplained order upholding that judgment, federal courts employ the following "look through" presumption: "[T]he federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 584 U.S. ___, 138 S. Ct. 1188, 1192 (2018). Consistent with *Wilson*, this court presumes that the First DCA rejected Petitioner's claim for the reasons provided by the state trial court.

Petitioner has not demonstrated that the state court's adjudication of his double jeopardy claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law. Section 810.145(8)(a)(3) states that a person 24-years of age or older commits a second-degree felony if the crime of video voyeurism is perpetrated against a child younger than 16 years of age. A person commits video voyeurism when:

> For his or her own amusement, entertainment, sexual arousal, gratification, or profit, or for the purpose of degrading or abusing another person, intentionally uses or installs an imaging device to secretly view, broadcast, or record a person, without that person's knowledge and consent, who is dressing, undressing, or privately exposing the body, at a place and time when that person ahs a reasonable expectation of privacy.

Fla. Stat. 810.145(2)(a) (2011).

The state court determined that the statute's language expresses the clear legislative intent that each illicit recording of the person constitutes a new violation of the statute and a separate offense. This District Court is bound to accept the Florida courts' construction of Florida law. *Stoddard v. Sec'y, Dep't of Corr.*, 600 F. App'x 696, 705 (11th Cir. 2015) (deferring to Florida state court's construction of its own statute in conducting habeas review of double-jeopardy claim (citing *Hunter*, 459 U.S. at 368)); *Deloach v. Wainwright*, 777 F.2d 1524, 1525–26 (11th Cir. 1985) (affirming denial of § 2254 petition and explaining that a federal court is "bound by the Supreme Court of Florida's interpretation of its legislative enactments" and determination that the Florida Legislature intended multiple punishments for felony murder and the underlying felony); *Dodge v. Robinson*, 625 F.3d 1014, 1017 (8th Cir. 2010) ("In multiple-punishment cases, the court's role is strictly cabined. 'With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does not more than prevent the sentencing court from prescribing greater punishment than the legislature intended.' The third double jeopardy protection, then, turns on legislative intent." (quoting *Hunter*, 459 U.S. at 366)).

The state court also determined that the evidence presented at trial was sufficient to permit the jury to conclude that the memory card from the video-camera contained five distinct video clips/recordings of L.F. privately exposing her nude body and, thus, that five distinct criminal acts occurred. *See* Doc. 10-5, Ex. D at 68-70. Petitioner has not met his burden of showing that this determination involved an unreasonable application of clearly established federal law, or that it was based on an unreasonable determination of the facts in light of the evidence presented at his trial. *See* U.S.C. § 2254(d).

The state court's rejection of Petitioner's double-jeopardy claim was not contrary to and did not involve an unreasonable application of clearly established federal law. Petitioner also has not shown that the state court's factual determination was objectively unreasonable. Petitioner is not entitled to habeas relief on Ground Nine.

**<u>Ground Ten</u>**    **<u>"Federal due process clause was violated when the trial court denied defense counsel's motion for judgment of acquittal because the State failed to rebut Petitioner's reasonable hypothesis of innocence that he placed the camera to determine whether his adopted children C.F. and Bryce were engaging in inappropriate sexual activity in the bathroom of his home in violation of the 14th Amendment to the U.S. Constitution." Doc. 1 at 22.</u>**

Petitioner claims that the trial court violated the Due Process Clause of the Fourteenth Amendment when it denied his motion for judgment of acquittal on the

Page 64 of 77

voyeurism charges. Doc. 1 at 22-23. Petitioner states that an acquittal was required because the State failed to rebut his reasonable hypothesis of innocence on the issue of intent. *Id*.; Doc. 20 at 21.

The State asserts that Petitioner's claim presents a purely state-law issue. Doc. 10 at 69. The State explains that the federal "sufficiency of the evidence" standard articulated in *Jackson v. Virginia, supra*, does not encompass a "hypothesis of innocence" component in circumstantial evidence cases, and that the latter is a creation of Florida law providing greater protection than the federal standard. Doc. 10 at 70 (citing *Preston v. Sec'y, Fla. Dep't of Corr.*, 785 F.3d 449, 457 (11th Cir. 2015)). The State alternatively argues that the state court's denial of relief on this claim was not contrary to, or an unreasonable application of, federal law. Doc. 10 at 71.

For context, in *Preston*, the Eleventh Circuit held that the petitioner procedurally defaulted his federal sufficiency-of-the-evidence claim, because he did not present the issue as a federal claim in the state court. The Eleventh Circuit explained the difference between a federal sufficiency-of-the evidence claim, and a state-law claim based on Florida's circumstantial evidence rule:

> [I]n cases turning on circumstantial evidence, the Florida standard for assessing a sufficiency of the evidence challenge differs greatly from the federal standard. While Florida may apply the *Jackson* standard in resolving an ordinary sufficiency claim, *see, e.g., Melendez v. State*,

Page 65 of 77

498 So.2d 1258, 1261 (Fla. 1986), a "special standard of review of the sufficiency of the evidence applies where a conviction is wholly based on circumstantial evidence," or "predicated chiefly upon circumstantial evidence," *Thorp v. State*, 777 So.2d 385, 389 (Fla. 2000) (per curiam) (quotation omitted). It is an age-old rule in Florida that "[w]here the only proof of guilt is circumstantial, no matter how strongly the evidence may suggest guilt, a conviction cannot be sustained unless the evidence is inconsistent with any reasonable hypothesis of innocence." *Id*. (quotation omitted); *see, e.g., Lowe v. State*, 90 Fla. 255, 105 So. 829, 830 (1925) (requiring that the evidence be "irreconcilable with any reasonable theory of [the defendant's] innocence and exclude to a moral certainty every hypothesis but that of his guilt").

It is precisely the Florida rule, however, that the Supreme Court has rejected as a matter of federal law. In *Jackson*, the case upon which Preston rests his entire sufficiency of the evidence challenge, the Court instructed that a petitioner is entitled to relief under the Due Process Clause only if "no rational trier of fact could have found proof of [his] guilt beyond a reasonable doubt." *Jackson*, 443 U.S. at 324, 99 S. Ct. 2781. Under federal law, the prosecution does not have "an affirmative duty to rule out every hypothesis except that of guilt beyond a reasonable doubt." *Id*. at 326, 99 S. Ct. 2781. This remains true even when the only evidence relied on is "circumstantial evidence in the record." *Id*. at 324, 99 S. Ct. 2781. Thus, in cases involving circumstantial evidence, whether a defendant raises his sufficiency claim in terms of state or federal law can matter a great deal.

Preston invoked and relied upon Florida's unique rule for convictions based on circumstantial evidence in challenging his conviction. . . . The Florida Supreme Court had no opportunity to even consider federal law, because, as we've explained, Preston never once raised *Jackson*, the *Jackson* standard, any federal cases, the Due Process Clause or any other constitutional provisions, or, indeed, even referenced the word "federal" in his briefing on this claim.

Any federal claim that Preston could have brought would have been judged by a different standard than the state claim he actually did bring.

Page 66 of 77

*Preston*, 785 F.3d at 460-61.

### A.    Petitioner's Claim Does Not Warrant Federal Habeas Relief

The undersigned assumes to Petitioner's benefit, without deciding, that Petitioner's claim here is a federal sufficiency-of-the-evidence claim under *Jackson*. The undersigned also assumes to Petitioner's benefit, that he exhausted this federal claim in his direct appeal. The First DCA's summary affirmance is an "adjudication on the merits" of Petitioner's claim, and is reviewed under § 2254(d)'s deferential standard. *See Richter*, 562 U.S. at 99, 100. To warrant habeas relief, Petitioner must demonstrate that the First DCA's rejection of his claim was contrary to, or an unreasonable application of, the *Jackson* standard.

A fairminded jurist could agree with that state court's conclusion that Petitioner's convictions satisfied the *Jackson* standard. Viewing the trial evidence in the light most favorable to the prosecution, a rational trier of fact could have found that the State proved the element of intent beyond a reasonable doubt. The State had no constitutional obligation to exclude every hypothesis other than guilt. *Preston*, 785 F.3d at 466; *see also id.* at 460 ("Under federal law, the prosecution does not have 'an affirmative duty to rule out every hypothesis except that of guilt beyond a reasonable doubt.' . . . This remains true even when the only evidence relied on is 'circumstantial evidence in the record.'" (quoting *Jackson*, 443 U.S. at 324, 326)).

Page 67 of 77

To the extent the First DCA's rejection of Petitioner's claim was grounded in Florida's special standard of sufficiency review where a conviction is predicated in whole—or chiefly upon—circumstantial evidence, this court will not review the First DCA's reasoning. That is a purely state-law question that provides no basis for federal habeas relief. *Estelle*, 502 U.S. at 67-68.

For the reasons discussed above, Petitioner is not entitled to habeas relief on Ground Ten.

## V.  PETITIONER'S MOTION TO "SUPPLEMENT" HIS PETITION AND TO STAY THIS PROCEEDING

Petitioner has filed a motion to "supplement" Ground One of his petition, accompanied by his proposed supplement. Docs. 27, 28. Petitioner asserts that his supplemental allegations are based on "newly discovered evidence" in the form of an affidavit he obtained from C.F. in April 2021. Doc. 28 at 1. In her affidavit, C.F. confirms her sexual relationship with Bryce in 2009 when she was 14-years old and he was 21-years old. Doc. 24, Ex. A, ¶¶ 2-5 (C.F. Aff.). C.F. also describes L.F.'s physical appearance at various ages, and opines that L.F. was 8 years old in the bathroom videos. *Id.*, ¶ 8. C.F. expresses her willingness, now, to testify to those facts. *Id.*, ¶ 8.

Petitioner asserts that C.F.'s affidavit bolsters his ineffective-assistance claim that Ward should have called C.F. to testify. Petitioner's supplemental allegations state:

> Before trial, Mr. Furtys informed his trial counsel that [C.F.] had knowledge about the Department of Children and Families (DCF) Investigation concerning her sexual relationship with Robert Bryce Furtys. He informed his trial counsel that [C.F.] also had knowledge regarding the age of [L.F.] in the video. She knew that [L.F.] was 8 years old in the video, her English was not fluent at the time in the audio of the video and that [L.F.] did not have any female development in the video as opposed to when she was 10 years old. Defendant asserts that he informed his counsel that [C.F.] knew that [L.F.] had short hair in 2009 when she was 8 years old that would contradict the State's key witness's testimony. Defendant asserts that Anna and [L.F.] offered the jury fabricated testimony that the video was from 2011 instead of 2009 to secure a conviction against him to give her an advantage in the divorce proceedings.
>
> . . .
>
> As a result of trial counsel's failure to investigate this issue, locate and call [C.F.] to testify at the Defendant's jury trial, the jury was not aware of an additional witness who could have corroborated his theory of defense that the prosecution's case was brought after the statute of limitations period expired.

Doc. 17 at 4-5. Petitioner also asserts that C.F.'s testimony concerning her sexual relationship with Bryce "would have supported his defense theory and hypothesis of innocence that he setup the camera to catch [C.F.] and Bryce in a sexual relationship for proof in the DCF investigation." *Id*. at 6.

Concerning exhaustion, Petitioner states that he presented this trial-counsel-ineffectiveness claim involving "newly discovered evidence" to the state court in a *third* Rule 3.850 motion filed in December 2021. Doc. 27 at 7; *see also* Doc. 24, Attach. (copy of motion). Petitioner indicates that the state circuit court denied relief on April 14, 2022. Doc. 27 at 7. A copy of the state circuit court's order is attached to this Report and Recommendation. *See* Attach. 1.

The state circuit court denied Petitioner's third Rule 3.850 motion on the independent and adequate state-law ground that it was procedurally barred. *See* Attach. 1. The state court declined to consider the merits of Petitioner's "new" ineffective-assistance-of-trial-counsel claim because Petitioner failed to satisfy Florida's standard for overcoming the prohibition on successive postconviction motions. The court found that Petitioner not only failed to demonstrate that the evidence was "new," he also failed to show that the evidence was of such nature that it probably would produce an acquittal on retrial. The court explained:

> The allegations made within the affidavit are either cumulative, inconsistent with what C.F. had previously disclosed to law enforcement, speculative, or constitute impeachment evidence. The claims regarding Defendant's reasons for covertly recording his children are cumulative to his testimony at trial. *Attach. B* at 127-30. Thus, the Court finds Defendant was not prejudiced by their absence.
>
> The claims that the video must have been filmed in 2009 because the camera would have been removed afterwards conflict with C.F.'s own interview with law enforcement where she told the investigating

officer that L.F. had discovered the recording device approximately in 2012. *State's Response* at 12. That the camera was discovered in 2012 was consistent with testimony by Anna Furtys. *Attach. C* at 32-35. Ms. Furtys testified the only time L.F.'s hair was short during the time she lived with her was when she was 10 years old, in 2011, contrary to the allegation C.F. now makes, and after Bryce Furtys had moved out of their home. *Attach. C* at 34-35.

[C.F.'s] claims that Defendant "did not set the camera up for his own enjoyment" and "would have removed the camera after [Bryce Furtys] left" are speculative. Additionally, [C.F.'s] claim that L.F. "probably" testified that she was 10 years old in the videos because of her desire to obey her mother is also speculative and constitutes impeachment evidence.

Finally, there was additional testimony at trial that supported the claim that the videos were viewed and recorded for the Defendant's "own amusement, entertainment, sexual arousal, and/or gratification." § 810.145(8)(a)(3). L.F. testified that the Defendant would hit her buttocks, call her pretty, and compliment how she looked every day. *Attach. C* at 82. L.F. further testified that she had heard the Defendant fall outside the bathroom door as she was preparing to bathe. *Id.* at 82-83. When she opened the door to inquire, the Defendant's head was near the gap between the floor and door, and he was hiding a round mirror behind his leg. *Id.* The jury was also able to view the yearbook photos of L.F. at the ages of 8, 9, and 10 to determine for itself when the videos were recorded and whether, as a result, that date was incompatible with Defendant's theory of defense. *Attach. C* at 32-35. Likewise, the jury was able to determine L.F.'s maturation at the time of the videos. *Id.*

Attach. 1 at 3-4 (citations to caselaw omitted).

Petitioner states that his state-postconviction appeal is pending in the First DCA. Doc. 27 at 7; *see also Furtys v. State*, No. 1D22-1491 (Fla. 1st DCA May 16, 2022). Petitioner asks this court to stay his federal habeas proceeding until his

postconviction appeal concludes, so that he may avoid his proposed "supplemental petition" being dismissed as a mixed petition (a petition containing both exhausted and unexhausted claims). Doc. 29.

Petitioner's motion to "supplement" or amend Ground One of his petition is futile. Petitioner's additional allegations do not change the fact that his trial-counsel-ineffectiveness claim—both as originally pleaded and as supplemented—is procedurally defaulted. The state courts in Petitioner's second and third Rule 3.850 proceedings refused to consider the merits of the claims concerning Ward's failure to call C.F. to testify, because the claims were procedurally barred under state law.

Petitioner's "supplemented" allegations do not bring Petitioner any closer to excusing his procedural default under *Martinez*. Petitioner still fails to make the required showing that Attorney Sharpe in Petitioner's first Rule 3.850 proceeding was constitutionally ineffective for failing to raise this trial-counsel-ineffectiveness claim. *See supra* Part III.B.i. Petitioner only alleges that Sharpe failed to raise it.

Additionally, Petitioner fails to show, even with his "supplemental" allegations, that his trial-counsel-ineffectiveness claim is substantial. Petitioner again fails to make the threshold showing that (1) C.F was available and willing to testify *at Petitioner's trial in 2015*, and (2) she would have testified to the facts she now relates. In her affidavit, C.F. does not say that in 2015, she was willing to testify

at Petitioner's trial about her relationship with Bryce. She merely acknowledges, now, that they had an illicit relationship. Doc. 24, Ex. A at 2-3.[17] Concerning L.F.'s appearance, all C.F. says is that she *now* is "inclined to truthfully testify," and that she "could and would testify," about L.F.'s appearance at various ages. Doc. 24, Ex. A at 2-3. Petitioner's claim that C.F. would have testified at his trial remains purely speculative.

Petitioner also fails to plausibly show, still, that Ward's decision not to call C.F. to testify was one that no competent counsel would have made. *See* discussion *supra* Part III.B.ii.a. It is obvious that Ward was aware that C.F. had personal knowledge about whether she actually had a sexual relationship with Bryce, and what L.F. looked like at various ages. A competent attorney, however, could not ignore the high risk and limited benefit of calling C.F. to testify. *See Strickland*, 466 U.S. at 681 ("Because advocacy is an art and not a science, and because the adversary system requires deference to counsel's informed decisions, strategic

---

[17] C.F. also acknowledges that she refused to cooperate with the DCF investigation into her relationship with Bryce. Doc. 24, Ex. A, ¶ 5. After that investigation, C.F. and Bryce ran away together and were Baker Acted. Doc. 10-5, Ex. D at 46, 138-40. C.F. then refused to cooperate with the subsequent law enforcement investigation. Doc. 24, Ex. A, ¶ 5; Doc. 10-5, Ex. D at 149. C.F. moved out of the Furtyses home in May 2013. Doc. 10-2, Ex. A at 45.

choices must be respected in these circumstances if they are based on professional judgment.").

Petitioner fares no better with his attempt to show prejudice under *Strickland*. Petitioner's "supplemented" allegations do not plausibly show that it is substantially likely that C.F.'s testimony would have caused the jury to acquit Petitioner. *See* discussions *supra* Part III.B.ii.a.-b.; *see also* Attach. 1. Petitioner must show more than a *conceivability* of an acquittal. It bears noting—as the various state courts in Petitioner's postconviction proceedings have emphasized—that the jury itself was able to compare the bathroom video-recordings of L.F. to the State's pictorial evidence of L.F. at ages 8-11 (as well as L.F.'s appearance at trial). Petitioner only speculates that C.F.'s testimony would have caused the jury to change its view of that physical evidence. Moreover, this court cannot ignore that the state trial court in Petitioner's first Rule 3.850 proceeding compared the bathroom video-recordings of L.F. to Petitioner's photographs of L.F. from 2008 and 2009 (the time period to which C.F. purportedly would testify). The state court found that L.F. does not look like she is 8 years old in the bathroom videos, and that the images of L.F. in 2008 and 2009 on Petitioner's cell phone are not consistent with L.F.'s appearance in the bathroom videos. Doc. 10-6, Ex. E at 420.

For all of the reasons outlined above, Petitioner's motion to "supplement" or amend his petition should be denied as futile. Petitioner's corresponding motion to stay this proceeding also should be denied, as Petitioner has not established that a stay is warranted. *See Rhines v. Weber*, 544 U.S. 269 (2005); *Davis v. Sellers*, 940 F.3d 1175, 1190-91 (11th Cir. 2019).

## VI.  A CERTIFICATE OF APPEALABILITY IS NOT WARRANTED

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. *See* 28 U.S.C. § 2254 Rule 11(b).

"[Section] 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El*, 537 U.S. at 336 (quoting 28 U.S.C. § 2253(c)). "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'"

*Buck v. Davis*, 580 U.S. ___, 137 S. Ct. 759, 774 (2017) (quoting *Miller-El*, 537 U.S. at 327). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484 (emphasis added). Here, Petitioner has not made the requisite demonstration. Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." 28 U.S.C. § 2254 Rule 11(a). If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

## VII. Conclusion

For the reasons set forth above the undersigned respectfully **RECOMMENDS** that:

1.    Petitioner's motion for leave to supplement, Doc. 28, be **DENIED**.

2.      Petitioner's renewed motion to stay this proceeding, Doc. 29, be

**DENIED**.

3.      The petition for writ of habeas corpus, Doc. 1, challenging the judgment

of conviction and sentence in *State of Florida v. Donald Furtys, Jr.*, Leon

County Circuit Court Case No. 2014-CF-537, be **DENIED**.

4.      The District Court **DENY** a certificate of appealability.

5.      The clerk of court close this case file.

At Panama City, Florida, this 8th day of August, 2022.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the report and recommendation. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.** *See* **11th Cir. R. 3-1; 28 U.S.C. § 636.**